**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

In re:

WOODLAND OAKS INVESTORS, LLC,

Debtor.

Chapter 11

Case No. 26-11987 (SAH)

**AFFIDAVIT OF SHAWYAN AHMADIAN**

STATE OF FLORIDA          )
                          ) ss.
CITY OF BOCA RATON        )

Shawyan Ahmadian, being first duly sworn, upon his oath, deposes and states:

1.      I am over 21 years of age and duly authorized to make this Affidavit. This Affidavit is based on my own personal knowledge.  I am a Vice President, Debt, Real Estate at Kayne Anderson ("**Kayne**").  Kayne is an agent of Plaintiff Saperean Capital IV TB Note Lender KD4, LLC ("**Lender**").  I am authorized to speak on behalf of Lender with respect to the allegations set forth in this Affidavit. I am the person responsible for the administration and ultimate collection of the loan at issue on behalf of Lender.

**I.      THE LOAN TRANSACTION**

2.      Lender is the owner and holder of that certain Promissory Note Secured by Mortgage, dated as of June, 1, 2022,  in the original principal amount of $60,800,000.00 (the "**Note**"), the makers of which are Woodland Oaks Best Living, LLC, Woodland Oaks Investors, LLC, Fairfax Best Living, LLC and Fairfax Investors, LLC (collectively, "**Debtors**").

3.      The Note evidences a certain commercial mortgage loan (the "**Loan**") by and between Debtors and Seperean Capital IV Originator, LLC ("**Original Lender**").

4.　　The terms and conditions of the Loan are set forth in that certain Loan Agreement, dated as of June 1, 2022 (the "**Loan Agreement**"), executed by Debtors.

5.　　In order to secure the amounts owed under the Note, in part, Debtors executed that certain Mortgage, Security Agreement, Assignment of Leases and Rents, and Fixture Filing, dated as of June 1, 2022 (the "**Mortgage**"), pursuant to which Debtors, as mortgagors, granted to Original Lender, as mortgagee, a first-priority lien on and security interest in certain real property, the improvements thereon, and personal property associated therewith, located as 7142 South 92nd East Avenue, Tulsa, Oklahoma 74133 (the "**Woodland Property**") and 7801 NE 10th Steet, Midwest City, Oklahoma (the "**Fairfax Property**" and together with the Woodland Property, as more fully described in the Mortgage, the "**Property**"). The Property consists of two separate multifamily apartment complexes.

6.　　The Mortgage was recorded (i) with the County Clerk of Oklahoma County (the "**Oklahoma County Clerk**") on June 3, 2022, in Book 15175, Page 1255; and (ii) with the County Clerk of Tulsa County (the "**Tulsa County Clerk**") on June 3, 2022, as Document No. 2022158173.

7.　　Original Lender assigned all of its right, title, and interest in and to the Loan and Loan Documents to Lender, as evidenced in part by that certain Assignment of Mortgage, Security Agreement, Assignment of Leases and Rents, and Fixture Filing and Other Underlying Loan Documents, recorded in the Tulsa County Clerk records on June 6, 2022, as Document Number 2022058958, and recorded in the Oklahoma County Clerk records on June 6, 2022, in Book 15177, Page 448.  Accordingly, Lender is the current owner and holder of all of Original Lender's rights, title, and interest in and to the Loan and Loan Documents and is entitled to enforce the same.

8.    On or about June 16, 2025, Lender and Debtors entered into that certain Second Amendment to Loan Agreement, dated as of June 16, 2025 (the "**Second Amendment**").  Pursuant to Section 3 of the Second Amendment, Debtors agreed to deliver on or before September 15, 2025, certain items (collectively, the "**Required Deliverables**"), including, without limitation, term sheets related to the sale of the Property and an "evergreen" irrevocable standby letter of credit in form and substance acceptable to Lender.

## II.    BORROWERS' DEFAULTS

9.    Debtors defaulted under the terms of the Loan Documents for, among other things, failing to deliver the Required Deliverables by September 15, 2025, which constitutes an Event of Default under the Loan Documents.

10.    Upon an Event of Default, Section 6.2(d) of the Security Instrument gives Lender the right "[t]o apply to a court of competent jurisdiction for and obtain appointment of a receiver of the Property as a matter of strict right and without regard to the adequacy of the security for the repayment of the Secured Obligations."

11.    Section 6.2(e) of the Security Instrument further gives Lender the right to possess, manage, and operate the Property as necessary. Further, under Section 3.2 of the Security Instrument, upon the occurrence of an Event of Default, Lender has the right to collect all sums which may at any time become due or payable from the Property, including all rental income generated therefrom.  Thus, Debtors have no legal right to occupy the Property, nor do they have any further right to collect rents and other income generated therefrom.

12.    In addition, Section 10.2 of the Loan Agreement in pertinent part provides:

> Upon the occurrence of any Event of Default specified in this ARTICLE 10 . . . and at any time thereafter, Lender may, in addition to any other rights or remedies available to it pursuant to this Agreement and the other Loan Documents or at law or in equity,

3

take such action, without notice or demand . . . that Lender deems advisable to protect and enforce its rights against Borrower and in and to the Property, including at its sole option declaring all sums owing to Lender under the Note, this Agreement and the other Loan Documents immediately due and payable. . . . During the continuance of an Event of Default, all or any one or more of the rights, powers, privileges and other remedies available to Lender against Borrower under this Agreement or any of the other Loan Documents executed and delivered by, or applicable to, Borrower or at law or in equity may be exercised by Lender at any time and from time to time, whether or not all or any of the Loan shall be declared due and payable.

13.     Accordingly, on or about September 19, 2025, Lender provided notice to Debtors of Debtors' defaults under the Loan Documents (the "**Default Notice**"). Debtors failed to cure the Events of Default, and on or about October 9, 2025, Lender provided notice to Debtors of Lender's election to accelerate the debt owed with respect to the Loan, foreclose the Mortgage, and seek appointment of a receiver to take possession of and administer the Property (the "**Acceleration Notice**").

14.     After accelerating the debt owed under the Loan, Lender became aware of additional Events of Default with respect to the Loan that included, without limitation, Debtors improperly granting a second mortgage on the Property to YSA Investments I, LLC ("**YSA**") in connection with additional financing that Debtors' former manager, Marc Kulick, obtained in violation of the Loan Documents, as well as Debtors allowing numerous liens to be recorded against the Property as a result of Debtors' failure to pay vendors and other contractors for services provided to the Property.

15.     Further, Lender was also informed by YSA, by a letter dated January 29, 2026 (the "**YSA Letter**"), that in addition to the second mortgage YSA holds on the Property, Debtors, by and through Mr. Kulick, granted YSA an equity pledge in the membership interests of Debtors, along with numerous other entities controlled by Mr. Kulick. YSA provided notice in the YSA

4

Letter that in connection with its pledge, YSA "exercised its rights to protect and preserve the value of the Kulick-Owned Entities' membership interests" and "is now the sole member of each Kulick-Owned Entity and owns 100% of its membership interests." The Kulick-Owned Entities include each of the Debtors.

### III.    APPOINTMENT OF RECEIVER

16.    On November 14, 2025, Lender filed its original *Verified Petition* (as later amended, the "**Complaint**") against Debtors in the District Court of Oklahoma County, Oklahoma (the "**State Court**"), Case No. CJ-2025-8496 (the "**State Court Case**"), seeking to enforce its rights and remedies under the Loan Documents, including foreclosure of the Property and appointment of a receiver for the Property.

17.    On January 22, 2026, with the consent and agreement of the Debtors, the State Court entered an *Agreed Order of Appointment of a Receiver* (which was later amended pursuant to that certain *Amended Agreed Order of Appointment of Receiver* entered on February 4, 2026 and referred to herein as the "**Receiver Order**"), pursuant to which the State Court appointed Scott Sheffman with Friedman Real Estate Management ("**Receiver**") as receiver for the Property.

### IV.    FORECLOSURE OF THE PROPERTY

18.    Thereafter, Lender proceeded with non-judicial foreclosure with respect to the Property. After canceling an earlier sale, Lender ultimately scheduled the Property to be sold at foreclosure sale scheduled for June 12, 2026 (the "**Sale**").

19.    On June 12, 2026, just minutes before the Sale was scheduled to take place, counsel for the Debtors attended the Sale and informed counsel for Lender that each of the Debtors had filed their respective bankruptcy petitions and proceedings (collectively referred to herein as the "**Petitions**"). The Petitions were signed by Marc Kulick as "authorized signer."

5

20.     Because evidence of the Petitions was not readily available at the Sale, Lender conditionally conducted the Sale, announcing that in the event that it was later determined that the automatic stay was in fact in place at the time of the Sale and the Bankruptcy Proceedings had been properly filed, the Sale would be deemed rescinded. Otherwise, if the Bankruptcy Proceedings were not timely filed or were improperly filed, the results of the Sale would be upheld.

21.     The Petitions were each signed by Marc Kulick as "authorized signer." However, Mr. Kulick was not authorized to take action on behalf of Debtors because his interests in Debtors and the Kulick-Related Entities had been foreclosed, leaving YSA as the sole member of Debtors and the other Kulick-Related Entities. Thus, the Petitions were not authorized at the time of filing and invalid.

22.     The Receiver was initially appointed by the Receiver Order and has remained in possession and control of the Property continuously since that date. Accordingly, the Receiver was in possession of the Property for more than one hundred and twenty (120) days prior to the filing of the Petitions.

23.     Following the appointment, the Receiver reported numerous instances of deferred maintenance, operational deficiencies, and physical deterioration at the Property. Among other things, the Receiver identified significant roof damage, non-functioning exterior lighting, boarded-up units, pest and rodent infestations, utility delinquencies, damaged amenities, and substantial capital repair needs affecting the Property.  Lender has also been advised that there is significant water intrusion at the Property that has created mold and the need for mold remediation.

24.     Based upon my review of the Receiver's reports and financial information concerning the Property, the Property does not generate sufficient cash flow to serve its indebtedness to Lender, fund necessary capital expenditures, and maintain ongoing operations.

Further, based on recent third-party engineering reports obtained by Lender, Lender estimates that the costs related to remediation of the deferred maintenance at the Property will likely exceed $6 million and this amount does not include the additional amounts needed for short-term capital needs related to the mismanagement of the Property by the Debtors.  In light of these financial issues related to the Property, there will be no ability of the Debtors to reorganize.

25. Based upon my analysis of current market conditions, the Property's rental income, operating performance, deferred maintenance, required capital expenditures, and information obtained from the Receiver, the current aggregate as-is value of the Property is approximately $42,800,000.

26. The estimated value of the Property is substantially less than the total indebtedness owed to Lender under the Loan Documents, which exceeds $61,000,000.00.

27. Based on my responsibility for administration of the Loan, my review of the Receiver's reports, and my familiarity with the financial condition of the Loan and Property, the interests of the creditors would be better served by permitting the Receiver to remain in possession, custody, and control of the Property rather than returning control to Debtors.

28. The Receiver has stabilized operations at the Property and has undertaken efforts to address the substantial deferred maintenance and operational issues that existed prior to the receivership. A transfer of control away from the Receiver at this time would risk disruption of those efforts and could negatively affect the value and condition of the Property.

29. Although Lender accelerated the Loan, Debtors' monthly interest-only payment would be $566,026 if the loan were still in good standing.

[Signature Page to Follow.]

7

Dated this _____ day of June 2026.

_____
Shawyan Ahmadian

## ACKNOWLEDGMENT

STATE OF FLORIDA          )
                          ) ss.
CITY OF BOCA RATON        )

THIS AFFIDAVIT was acknowledged before me on this 23 day of June, 2026, by

Shawyan Ahmadian, Vice President, Debt, Real Estate of Kayne Anderson.

[S E A L]

_____
NOTARY PUBLIC
My Commission Expires: 6/17/29
My Commission Number: HH 689163

HALIE STROES
Notary Public - State of Florida
Commission # HH 689163
My Comm. Expires Jun 17, 2029
Bonded through National Notary Assn.

8