**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| In re: | Chapter 11 |
| WOODLAND OAKS INVESTORS, LLC, | Case No. 26-11987 (SAH) |
| Debtor. | |

**SECURED CREDITOR SAPEREAN CAPITAL IV TB NOTE LENDER KD4, LLC'S
MOTION FOR DETERMINATION THAT PROPERTY IS SINGLE ASSET REAL
ESTATE UNDER 11 U.S.C. § 101(51B) AND NOTICE OF OPPORTUNITY FOR
HEARING**

**<u>NOTICE OF OPPORTUNITY FOR HEARING</u>**

**Your rights may be affected. You should read this Document carefully and consult your
attorney about your rights and the effect of this Document.** If you do not want the Court to
grant the motion, or you wish to have your views considered, you must file a written response to
the motion with the Clerk of the United States Bankruptcy Court for the Western District of
Oklahoma, 215 Dean A. McGee Avenue, Oklahoma City, OK 73102 no later than fourteen (14)
days from the date of filing of this request for relief. You should also serve a file-stamped copy of
the response to the undersigned and others who are required to be served and file a certificate or
affidavit of service with the Court.

**[NOTE – this is a flat fourteen (14) days regardless of the manner of service.]**

67563632_1

Kiran A. Phansalkar, OBA #11470
Preston M. Sullivan, OBA #33619
Elizabeth H. Attaway, OBA #35539
McAfee & Taft
8th Floor, Two Leadership Square
211 N Robinson Ave
Oklahoma City, OK  73102-7103
Telephone:  (405) 235-9621
Email:  kiran.phansalkar@mcafeetaft.com
         preston.sullivan@mcafeetaft.com
         beth.attaway@mcafeetaft.com

-and-

Nicholas A. Griebel
(*pending admission pro hac vice*)
POLSINELLI PC
7676 Forsyth Boulevard, Suite 800
St. Louis, Missouri 63105
Telephone:  (314) 622-6613
Email:  ngriebel@polsinelli.com
***Attorneys for Saperean Capital
IV TB Note Lender KD4, LLC***

67563632_1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

In re:

WOODLAND OAKS INVESTORS, LLC,

Debtor.

Chapter 11

Case No. 26-11987 (SAH)

**SECURED CREDITOR SAPEREAN CAPITAL IV TB NOTE LENDER KD4, LLC'S MOTION FOR DETERMINATION THAT PROPERTY IS SINGLE ASSET REAL ESTATE UNDER 11 U.S.C. § 101(51B), AND NOTICE OF OPPORTUNITY FOR HEARING**

Saperean Capital IV TB Note Lender KD4, LLC ("**Lender**"), by and through its undersigned counsel, hereby moves the Court (this "**Motion**") for entry of an order finding and determining that (1) certain real property partially owned by debtors Fairfax Best Living, LLC, Fairfax Investors, LLC, Woodland Oaks Best Living, LLC, and Woodland Oaks Investors, LLC (each a "**Debtor**," and collectively, the "**Debtors**")[1] constitutes "single asset real estate" ("**SARE**") as such term is defined under Section 101(51B) of the United States Bankruptcy Code (the "**Bankruptcy Code**"). In support of this motion, Lender states as follows:

**INTRODUCTION**

1.       Lender is the owner and holder of a $60,800,000.00 commercial mortgage loan (the "**Loan**") made to the Debtors and holds a first-priority lien on the Debtors' sole assets: two multifamily apartment complexes, one of which is located in Midwest City, Oklahoma (the "**Fairfax Property**"), and one of which is located in Tulsa Oklahoma (the "**Woodland Property**"

---

[1]  On June 12, 2026, each of the Debtors filed separate bankruptcy petitions before this Court, as Case No. 26- 11984, Case No. 26-11985, Case No. 26-11986, and Case No. 26-11987 (collectively, the "**Petitions**"), despite each being co-obligors under the same loan transaction and co-owners of the single asset real estate that is the subject of this matter. A motion for joint administration was filed in each pending bankruptcy action on June 25, 2026. A hearing on the motion for joint administration was set for July 14, 2026. An amended motion for joint administration was filed in each pending bankruptcy action on June 25, 2026.

67563632_1

1

and together with the Fairfax Property, the "**Property**").  Debtors Fairfax Best Living, LLC and Fairfax Investors, LLC (collectively, the "**Fairfax Debtors**") own the Fairfax Property as tenants in common. Debtors Woodland Oaks Best Living, LLC and Woodland Oaks Investors, LLC (the "**Woodland Debtors**") own the Woodland Property as tenant in common.  No one Debtor owns more than one piece of real estate (i.e. none of the Fairfax Debtors own any of the Woodland Property, and none of the Woodland Debtors own any of the Fairfax Property).

2.      This case involves a classic example of "single asset real estate" as defined in Section 101(51B) of the Bankruptcy Code in that the Fairfax Debtors and Woodland Debtors each own only the Fairfax Property and the Woodland Property, respectively.  Further, the Debtors commenced their respective bankruptcy cases mere minutes before a scheduled non-judicial foreclosure sale (the "**Sale**") of the Property (and not until *after* the District Court of Oklahoma County, Oklahoma, denied the Debtors' request for a temporary restraining order ("**TRO**") to stop the sale earlier in the day[2]) in a blatant attempt to stop the Sale and delay Lender's lawful enforcement of its rights and remedies under the subject loan documents, and applicable State law. Lender accordingly asks that the Court, pursuant to Section 105 of the Bankruptcy Code, enter an Order requiring the Debtors to file their plans of reorganization no later than the 90th day following the Petition Date (as defined below), and providing that Lender shall be entitled to relief from the automatic stay if the Debtors fail to do so.

## JURISDICTION

3.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue in this Court is proper

---

[2]  The state court's docket entry denying the Debtors' motion for temporary restraining order is dated June 12, 2026, in a matter captioned *Saperean Capital IV TB Note Lender KD4, LLC v. Woodland Oaks Best Living, LLC, et al.*, Case No. CJ-2025-8499.

pursuant to 28 U.S.C. § 1409(a) because this is a proceeding arising under, arising in, or related to, a case under title 11 of the Bankruptcy Code.

## FACTUAL BACKGROUND

**The Loan Transaction**

4.      On June 1, 2022, Saperean Capital IV Originator, LLC ("**Original Lender**") made the Loan to the Debtors.

5.      The Loan is evidenced by that certain Promissory Note Secured By Mortgage, dated June 1, 2022, in the original principal amount of $60,800,000.00 (as at any time amended, the "**Note**"), the makers of which are the Debtors. A true and correct copy of the Note is attached hereto as **Exhibit A**.

6.      The terms and conditions of the Loan are set forth in that certain Loan Agreement, dated as of June 1, 2022 (the "**Loan Agreement**"), executed by the Debtors. A true and correct copy of the Loan Agreement is attached hereto as **Exhibit B**.

7.      The indebtedness owed under the Note is secured by that certain Mortgage, Security Agreement, Assignment of Leases and Rents, and Fixture Filing, dated June 1, 2022 (as amended from time to time, the "**Mortgage**"), and recorded (i) with the County Clerk of Oklahoma County (the "**Oklahoma County Clerk**") on June 3, 2022, in Book 15175, Page 1255; and (ii) with the County Clerk of Tulsa County (the "**Tulsa County Clerk**") on June 3, 2022, as Document No. 2022158173. A true and correct copy of the Mortgage is attached hereto as **Exhibit C**.

8.      The Mortgage encumbers certain real property, improvements thereon, and personal property, including the "**Property**").

9.      The Property consists of multifamily apartment complexes.

10.     Under Section 8.10 of the Loan Agreement, each Debtor covenanted that it "shall at all times be a Special Purpose Bankruptcy Remote Entity." Additionally, pursuant to Schedule I to the Loan Agreement, the Debtors covenanted that they were:

> formed/organized solely for the purpose of acquiring, developing, owning, improving, holding, selling, leasing, transferring, exchanging, managing and operating, and otherwise dealing with the Property . . . and transacting lawful business that is incident, necessary and/or appropriate to accomplish the foregoing, and (ii) has not owned, does not own, and will not own any asset or property other than (A) the Property, and (B) incidental personal property necessary for the ownership, management or operation of the Property.

Exhibit B (Loan Agreement), at Schedule I, ¶ (b). The Debtors also covenanted that they have "not engaged and will not engage in any business other than the ownership, management, leasing and operation of the Property." Exhibit B (Loan Agreement), at Schedule I, ¶ (c).

11.     In connection with the Loan, Marc Kulick ("**Kulick**") and John Alexander Upperman ("**Upperman**," and together, jointly and severally, with Kulick, "**Guarantors**") executed that certain Guaranty Agreement (the "**Guaranty**"), pursuant to which Guarantors guaranteed, among other things, payment to Lender of the full amount of the Loan and Borrower's indebtedness and obligations under the Note, the Loan Agreement, and the other Loan Documents (as defined therein and below) upon the occurrence of any Recourse Obligation (as defined therein). A true and correct copy of the Guaranty is attached hereto as **Exhibit D**.

**Assignment of the Loan to Lender**

12.     On June 3, 2022, Original Lender assigned the Mortgage and Loan Documents to Lender as evidenced in part by that certain Assignment of Mortgage, Security Agreement, Assignment of Leases and Rents, and Fixture Filing and Other Underlying Loan Documents (the "**Assignment**"), recorded in the Tulsa County Clerk records on June 6, 2022, as Document Number 2022058958, and in the Oklahoma County Clerk records on June 6, 2022, in Book 15177, Page 448. A true and correct copy of the Assignment is attached hereto as **Exhibit E**.

13.     The Note, the Loan Agreement, the Mortgage, the Guaranty, the Second Amendment, and all other documents executed in connection with, evidencing or securing the Loan are collectively referred to herein as the "**Loan Documents**."

14.     Lender is the owner and holder of the Loan and the Loan Documents.

**Pre-petition Litigation**

15.     On November 14, 2025, Lender filed a Verified Petition against the Debtors and various lien claimants in the District Court of Oklahoma County (the "**State Court**") as Case No. CJ-2025-8499 (the "**State Court Action**"), asserting claims for breach of contract, foreclosure, and appointment of a receiver.

16.     On January 22, 2026, ***with the consent and agreement of the Debtors***, the State Court entered an Agreed Order of Appointment of a Receiver (which was later amended pursuant to that certain Amended Agreed Order of Appointment of Receiver entered on February 4, 2026, and referred to herein as the "**Receiver Order**"), pursuant to which the State Court appointed Scott Shefman with Friedman Real Estate Management ("**Receiver**") as receiver for the Property.

**Foreclosure of the Property and Filing of the Bankruptcy Petitions**

17.     Following the Debtors' default under the Loan Documents, Lender proceeded with non-judicial foreclosure of the Property. After canceling an earlier sale, Lender ultimately scheduled the Property to be sold at foreclosure sale scheduled for June 12, 2026 (the "**Sale**").

18.     On June 12, 2026 (the "**Petition Date**"), just minutes before the Sale was scheduled to take place—and several hours *after* the State Court denied the Debtors' request for a TRO to stop the Sale—counsel for the Debtors attended the Sale and informed counsel for Lender that each of the Debtors had filed the Petitions. The Petitions were signed by Marc Kulick as "authorized signer."

67563632_1                                        5

19.     Curiously, Box # 7 of Official Form 201—Voluntary Petition for Non-Individuals Filing for Bankruptcy, asks Debtors to describe the nature of their business. One available option is "Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))." Debtors however each checked the box for "None of the above." *See* Petition, Dkt. 1.

20.     As of the Petition Date, the Debtors owe more than $61 million under the Note.

## RELIEF REQUESTED

21.     Lender seeks entry of an order declaring that the Property constitutes single asset real estate under the Bankruptcy Code.

## BASIS FOR RELIEF

22.     Section 101(51B) of the Bankruptcy Code defines "single asset real estate" as follows:

> real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

23.     The definition of "single asset real estate" contained in Section 101(51B) of the Bankruptcy Code is unambiguous.  If real property has the following characteristics, it is "single asset real estate" under the Bankruptcy Code:

   a.     if it constitutes a single property or project;
   b.     if it is not residential real property with fewer than four residential units;
   c.     if the real property generates substantially all of the gross income of debtor;
   d.     if debtor is not a family farmer; and
   e.     if no other substantial business is being operated on the real property other than the business of operating the real property and activities incidental to the operation of the real property.

Courts apply a three-part when determining whether property constitutes SARE: "(1) The property must be a single parcel or project; (2) The property must generate substantially all of the debtor's

67563632_1                                          6

income; and (3) The debtor cannot conduct any substantial business other than operating the property." *In re Kachina Village, LLC*, 538 B.R. 124, 127 (D. N.M. 2015)

24.    The Debtors and the Property satisfy all three factors. First, the Debtors each own only a single piece of property—the Woodland Debtors own the Woodland Property and the Fairfax Debtors own the Fairfax Property. Second, the Debtors have previously represented in the Loan Documents that they are special purpose entities ("**SPEs**") whose sole asset is the Property, indicating the Property generates substantially all of the Debtors' income. Exhibit B (Loan Agreement), at ¶ (a) of Schedule I (indicating Debtors were "formed/organized solely for the purpose of . . . dealing with the Property" and do not "own any asset or property other than . . . the Property"). Third, the Debtors also covenanted in the Loan Documents that they do not engage in any other business besides operating the Property. *Id*. at ¶ (c) of Schedule I ("Borrower has not engaged and will not engage in any business other than the ownership, management, leasing and operation of the Property.").

25.    Courts have consistently designated debtors to be single asset real estate debtors under similar circumstances.  *See In re Philmont Dev. Co.*, 181 B.R. 220, 224 (E.D.Pa. 1995) (finding that a single asset real estate case will often involve "an apartment building, office building, or 'strip' shopping center owned by an entity whose sole purpose was to operate that real estate with monies generated by the real estate"); *In re Kara Homes, Inc.*, 363 B.R. 399, 406 (Bankr. D. N.J. 2007) (designating affiliated debtors each owning single tract of real property for development as SARE debtors where each derived substantially all income from single tract and was not involved in any substantial business other than operation of real property).

26.    Along that line, the Loan transaction involves an integrated real-estate enterprise under a single financing and security structure. *See* Exhibit C (Mortgage), at § 1.1 (defining

67563632_1                                                                         7

"Property" to include both the Fairfax Property and the Woodland Property). The Mortgage in other words provides the Property constitutes a single collateral package for the Loan. The Property consists of two multifamily apartment complexes (and associated real and personal property), each of which are separately owned by the Fairfax Debtors and the Woodland Debtors, respectively, as tenants in common. *Id*. In addition, no single Debtor owns more than one piece of real estate. The Property therefore constitutes a single project for purposes of SARE designation pursuant to Section 101(51B) of the Bankruptcy Code. *See also In re Pioneer Austin E. Dev. I, Ltd.*, No. BKR. 10-30177-HDH-11, 2010 WL 2671732, at *2 (Bankr. N.D. Tex. July 1, 2010) (observing the definition of real property for purposes of Section 101(51B) of the Bankruptcy Code "recognizes that real estate development can be . . . comprised of several tracts or parcels of land, and still constitute a single property for the purpose of single asset real estate cases").

27.     In considering whether "no other substantial business is being operated" by a debtor other than the "business of operating the real property," bankruptcy courts will consider "whether the real property is used in the operation of a business or whether it is simply held for income." *In re Scotia Dev., LLC*, 375 B.R. 764, 777 (Bankr. S.D. Tex 2007) (citations omitted), *aff'd*, 508 F.3d 214 (5th Cir. 2007).  Thus, to be a SARE debtor, the revenues received by the debtor must be passive in nature and the debtor must not be actively conducting business other than operating the real property and activities incidental thereto. *Id*.  As a result, a debtor that operates real property where the debtor merely collects rents and maintains the building will be a SARE debtor.  *See In re Oakbrook Village, Inc.*, 108 B.R 838, 845 (Bankr. S.D. Ga. 1989) (holding that an apartment complex owner is a single asset real estate debtor).

28.     Here, the Debtors in these cases fit this description exactly. The Loan Agreement prohibits the Debtors from owning any other property or operating any other business beside "the

ownership, management, leasing and operation of the Property," <u>Exhibit B</u> (Loan Agreement), at Schedule I, ¶¶ (a), (c). Because (prior to appointment of the Receiver) the Debtors did nothing more than collect rent from their respective single assets, this Court should deem their respective bankruptcy cases SARE cases.

## CONCLUSION

29.    Each Debtor's bankruptcy case was filed solely for the purposes of delay, as demonstrated by, among other things, Debtors filing mere minutes before Lender's properly-noticed non-judicial foreclosure Sale after having already failed to secure a TRO earlier in the day. Lender respectfully asks that the Court not permit the Debtors to avoid the expedited procedure Congress intended for SARE debtors and requests that the Court enter an order declaring that the Property constitutes single asset real estate under the Bankruptcy Code

**WHEREFORE**, Lender moves the Court for entry of an order declaring that the Property constitutes single asset real estate under Section 101(51B) of the Bankruptcy Code and granting all other and further relief that the Court deems just and appropriate.

Respectfully submitted,


*/s/ Kiran A. Phansalkar*
Kiran A. Phansalkar, OBA #11470
Preston M. Sullivan, OBA #33619
Elizabeth H. Attaway, OBA #35539
McAfee & Taft
8th Floor, Two Leadership Square
211 N Robinson Ave
Oklahoma City, OK  73102-7103
Telephone:  (405) 235-9621
Email:   kiran.phansalkar@mcafeetaft.com
             preston.sullivan@mcafeetaft.com
             beth.attaway@mcafeetaft.com

-and-

Nicholas A. Griebel
(*pending admission pro hac vice*)
POLSINELLI PC
7676 Forsyth Boulevard, Suite 800
St. Louis, Missouri 63105
Telephone:  (314) 622-6613
Email:  ngriebel@polsinelli.com
**Attorneys for Saperean Capital
IV TB Note Lender KD4, LLC**

67563632_1

10

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2026, I electronically transmitted this filing to the Clerk of the Court using the ECF system for filing and transmittal of Notice of Electronic Service to the ECF registrants of record.

*/s/ Kiran A. Phansalkar*
Kiran A. Phansalkar

67563632_1

11